UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BRONYA TROSTENETSKY,

    Plaintiff,

v.

THE KEYS CONDOMINIUM OWNERS ASSOCIATION,

    Defendant.

Case No. 17-cv-04167-RS

**ORDER DENYING MOTION TO DISMISS**

## I. INTRODUCTION

Defendant The Keys Condominium Owners Association (the "Association") moves to dismiss plaintiff Bronya Trostenetsky's claims under the Americans with Disabilities Act ("ADA"), her state and federal retaliation claims, and her prayers for punitive damages and injunctive relief. Pursuant to Civil Local Rule 7-1(b), the motion is suitable for disposition without oral argument, and the hearing set for May 25, 2018, is vacated. For the reasons set forth below, the motion is denied.

## II. BACKGROUND[1]

Trostenetsky is an 80-year-old woman who has been a residential tenant of a property (the "Property") owned, operated, and leased by the Association. As a result of physical disability, she

---

[1] All facts recited in this section are drawn from the third amended complaint ("TAC") and taken as true for the purposes of deciding this motion.

is unable to stand or walk independently, and requires the use of a wheelchair. Due to her disability, Trostenetsky is unable to use portions of the Property not designed and/or constructed in compliance with applicable accessibility standards to accommodate disabled persons who require a wheelchair for mobility. The Property is a condominium complex with more than four dwelling units, and is therefore subject to the requirements imposed by the Fair Housing Act, 42 U.S.C. § 3601 *et seq*. Portions of the Property are open to the general public and are therefore subject to the provisions of Title III of the ADA, 42 U.S.C. § 12181(7). Trostenetsky has been denied equal access with able-bodied persons to several common use areas, the most significant of which are: (1) the elevator on the lobby floor, which is accessible only via steps, (2) the front entry and exit to the clubhouse of the Property from the sidewalk, which also requires the use of steps, and (3) the swimming pool, due to the nonfunctionality of the swimming pool lift.

Trostenetsky has complained of these issues to the Association's management but her requests for accommodation were denied. She filed this action on July 21, 2017. The complaint has been amended several times to incorporate information acquired through site inspections pursuant to General Order 56, and in response to the Court's partial grant of the Association's motion to dismiss on December 12, 2017. The Association now moves to dismiss Trostenetsky's third amended complaint ("TAC"), arguing that it contains insufficient allegations supporting her claim that any part of the Property is a place of public accommodation or that the Association retaliated against her for exercising her rights.

### III. LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While "detailed factual allegations are not required," a complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard asks for "more than a sheer possibility that a defendant acted unlawfully." *Id.*

The determination is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Id.* at 679.

A motion to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal under Rule 12(b)(6) may be based on either the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013). When evaluating such a motion, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). When a plaintiff has failed to state a claim upon which relief can be granted, leave to amend should be granted unless "the complaint could not be saved by any amendment." *Gompper v. VISX, Inc.*, 298 F.3d 893, 898 (9th Cir. 2002) (citation and internal quotation marks omitted).

## IV. DISCUSSION

### A. ADA Claims

Under federal law, apartments and condominiums do not, generally speaking, constitute public accommodations within the meaning of the ADA. *See Indep. Hous. Servs. of San Francisco v. Fillmore Ctr. Assocs.*, 840 F. Supp. 1328, 1332 (N.D. Cal. 1993). Certain portions of a residential facility, however, may be covered by the ADA depending on who is entitled to use that space. For example, according to guidance issued by the Department of Justice, a clubhouse intended for the exclusive use of residents and their guests is considered an amenity of the housing development and is not subject to the ADA. If made available to the general public for rental or use, clubhouse facilities would be covered. *See* Dept. of Justice, Office on the Americans with Disabilities Act, 202-PL-118 (Sept. 11, 1992); *see also Nicholls v. Holiday Panay Marina, L.P.*, 173 Cal. App. 4th 966 (2009) (renting slips to the general public rendered a restricted access marina a place of public accommodation).

Trostenetsky alleges, "upon information and belief, the club house and pool are open to the

1  general public because the club house holds yoga classes that the public may attend. Furthermore,

2  upon information and belief, the gym located at the Property is open to members attending yoga

3  classes. The leasing office is also open to the general public and the parking adjacent to the leasing

4  office is explicitly reserved for the general public to use and marked for visitors." TAC ¶ 8. The

5  Association contends that "upon information and belief" allegations are insufficient to state a

6  claim for relief, in light of level of detail provided elsewhere in the TAC regarding numerous

7  physical access barriers identified by Trostenetsky's expert during site inspections. Contrary to the

8  Association's representations, the standard on a motion to dismiss does not involve speculation

9  about whether a plaintiff could have alleged her claims in more detail, only whether her factual

10 allegations are adequate to support a claim that is plausible on its face. Trostenetsky is not

11 required, at this stage of litigation, to assert that any of the above identified spaces are "dependent

12 on funding by the public, advertised to the public, or were established with the purpose of being

13 available to the public." Mot. to Dismiss at 7. Indeed, the Association points to no authority

14 indicating as much. Here, Trostenetsky's averments are sufficient to support a reasonable

15 inference that some parts of the Property are generally accessible by the public and therefore fall

16 within the purview of the ADA. For that reason, the Association's motion to dismiss

17 Trostenetsky's ADA claims is denied.

**B. Retaliation Claims**

The Association moves to dismiss Trostenetsky's eighth through eleventh claims for relief, which allege intimidation, harassment, or interference with the exercise of her rights under the ADA, the Federal Fair Housing Act ("FHA"), and the California Fair Employment and Housing Act ("FEHA"). Trostenetsky alleges that after she filed this complaint, Inna Tsukerman, acting as the Association's agent, "told Ms. Trostenetsky that all other Russian speaking residents of the Property, including ones who are disabled, have decided to boycott her because this lawsuit would benefit only her and the remaining residents would suffer a tremendous monetary loss because they are forced to pay for all improvements." TAC ¶ 14. According to Trostenetsky, Tsukerman's "threats of incommunicado" caused her "to suffer a nervous breakdown and emotional distress."

*Id.* Moreover, Trostenetsky "is informed and believes the Defendants disseminated amongst the Russian speaking residents this information in order to retaliate against Ms. Trostenetsky by spreading among the targeted population the false information damaging to Ms. Trostenetsky's reputation and mental health." *Id.* ¶ 16.

The Association objects to the sufficiency of Trostenetsky's claims on two grounds. First, the Association asserts that there is no evidence that Tsukerman's alleged former membership on the board of the Association gives rise to an agency relationship between her and the Association. While that may be true, Trostenetsky professes the belief that Tsukerman acted on the Association's behalf when she made the above described comments. At the pleading stage, this is sufficient to raise a plausible inference that Tsukerman's actions can be imputed to the Association. Second, the Association contends that even if Tsukerman was acting as its agent, the "boycotting" of Trostenetsky by her fellow Keys residents is not legally actionable retaliation or harassment. In *Sporn v. Ocean Colony Condominium Ass'n*, 173 F. Supp. 2d 244, 251 (D.N.J. 2001), a district court found that the plaintiff's allegations of being "shunned" by neighbors after lodging an FHA complaint did not constitute coercion, intimidation, or interference with the exercise of her rights under 42 U.S.C. § 3617. In other words, the court reasoned, Section 3617 does not require neighbors to be friendly to FHA plaintiffs. *Id.* at 251-252. Unlike the plaintiff in *Sporn*, however, Trostenetsky is not merely alleging unpleasant treatment from her neighbors – rather, she accuses the Association of spreading misinformation about her motives for bringing suit and threatening to isolate her from her community as a form of intimidation. She also indicates that Tsukerman told her about the boycott in order to demonstrate that the lawsuit would have negative consequences for Trostenetsky and that the purpose of the intimidation was to force her to move. At the pleading stage, these allegations are sufficient to support Trostenetsky's claims of retaliation and harassment. Therefore, the Association's motion to dismiss Trostenetsky's eighth through eleventh claims for relief is denied.

### C. Punitive Damages

The Association moves to strike Trostenetsky's prayer for punitive damages in connection

ORDER DENYING MOTION TO DISMISS
CASE NO. 17-cv-04167-RS

5

with her claims under the FHA, FEHA, and the Unruh Civil Rights Act, and for unlawful interference and retaliation in connection with the exercise of those rights. Punitive damages may be awarded in a fair housing action under federal law upon a showing of "reckless or callous indifference" to the fair housing rights of others, *see Fair Housing of Marin v. Combs*, 285 F.3d 899, 906-907 (9th Cir. 2002), and under state law upon a showing of "willful and conscious disregard for the rights and safety of others," *see* Cal. Gov. Code § 3294(a), (c)(1). The Association's contention that the TAC lacks a factual basis for asserting willful conduct is unpersuasive. Trostenetsky claims that she complained of accessibility issues twice to the Property's management and was refused her requested accommodations. She also alleges that the Association has sought to intimidate her in response to this lawsuit. These allegations are sufficient to support a prayer for punitive damages on the grounds that the Association acted in conscious disregard of her fair housing rights. Accordingly, the Association's motion to dismiss Trostenetsky's prayer for damages is denied.

### D. Injunctive and Declaratory Relief

Finally, the Association asserts that Trostenetsky's prayer for injunctive and declaratory relief should be dismissed because she asserts in her complaint that she is no longer a resident at the Property and therefore lacks standing to seek injunctive relief. Specifically, she alleges "defendants through their agents have retaliated against plaintiff, inter alia, by intimidating her and forcing her to move out of the Property after plaintiff filed a complaint in this Court alleging discrimination based on her disability." TAC ¶ 81. In her opposition, Trostenetsky denies the Association's interpretation of that line of the complaint and affirms that she is still a resident of the Property. The word "forcing," according to Trostenetsky, is meant to signify that the efforts to coerce her into leaving the Property are ongoing but have so far not been successful. Reading the TAC in the light most favorable to Trostenetsky, nothing unequivocally indicates she is no longer resident at the Property. Therefore, the Association's motion to dismiss her prayer for injunctive and declaratory relief for lack of standing is denied.

### V. CONCLUSION

For the reasons set forth above, the Association's motion to dismiss Trostenetsky's third amended complaint is denied.

**IT IS SO ORDERED**.

Dated: May 16, 2018

_____
RICHARD SEEBORG
United States District Judge